UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GMAC, LLC,

        Plaintiff,

v.                                                                                Case No. 09-C-293

GUSTMAN CHEVROLET-OLDS-CADILLAC, INC., et al.,

        Defendants.

**DECISION AND ORDER**

        This action arises out of Plaintiff GMAC, LLC's request for a temporary restraining order and other preliminary relief relating to the repossession of automobiles in which it has a security interest. A hearing was held on March 20, and an evidentiary hearing occurred on April 2. That hearing was resumed on April 15, and the parties have since filed briefs. For the reasons given below, the motion for preliminary relief will be denied.

        Gustman Chevrolet-Olds-Cadillac, Inc. (herein, "Gustman") has been a dealer of General Motors cars in Marinette, Wisconsin since 1957. Like almost every car dealer, it has been struck by a poor economy and a lower demand for new cars. GMAC, which has provided Gustman what is called floor plan financing since the dealership began, has become concerned about Gustman's solvency. Evidence at the hearing suggested that GMAC had been concerned about Gustman even before the economic downturn manifested itself in 2008. Because of this concern – which Gustman alleges is overblown – on September 19, 2008 GMAC wrote to Steve Gustman to inform him that GMAC would be terminating its credit lines effective December 19. Subsequent communications

indicated that the credit line could be saved if Gustman provided $400,000 in additional capital, or if it had an agreement to sell the dealership by December 18. Gustman was unable to meet these requirements, so on December 18 Steve Gustman phoned Paul Bennett, the GMAC official in charge of the account. Steve Gustman asked whether GMAC was going to come and take the cars off the lot, and according to Gustman, Bennett said that Gustman would be allowed to continue to sell the cars in the ordinary course of business. (Bennett recalls that he said they were not planning to take the cars *immediately*.) In reliance on the statement that he could continue selling the cars, Gustman soon obtained a $450,000 loan from the Farmers and Merchants Bank and Trust of Marinette. He spent some of these funds on payroll and advertising – expenditures that would be wasted if all of Gustman's cars were repossessed.

"A party seeking a preliminary injunction must demonstrate that he is reasonably likely to succeed on the merits, that he is experiencing irreparable harm that exceeds any harm his opponent will suffer if the injunction issues, that he lacks an adequate remedy at law, and that the injunction would not harm the public interest.*" Coronado v. Valleyview Public School Dist. 365-U,* 537 F.3d 791, 795 (7th Cir. 2008). The first consideration is whether GMAC has any likelihood of success on the merits. GMAC asserts that its contracts give it essentially *carte blanche* to terminate the financing and recover the vehicles. The agreements governing the financing relationship provide that "in the event GMAC deems itself insecure," it may take immediate possession of the vehicles. (Compl., Ex. A.) GMAC asserts that it has deemed itself insecure for a significant period of time, given the dealership's declining revenues. As such, it claims it has the immediate right to replevin. Gustman has asserted defenses of promissory estoppel and a breach of the duty of good faith and fair dealing. The estoppel argument is based on Paul Bennett's alleged promise that Gustman would

2

be allowed to continue selling the cars in the ordinary course of business. Gustman relied on this promise and obtained additional financing; the dealership also made expenditures that would be lost if the cars were immediately repossessed.

As I indicated at the hearing, however, I am not convinced that estoppel is a defense to a replevin action like this one. The interest protected by promissory estoppel is the *reliance* interest – those damages incurred by one party in reliance on a promise made by another. These damages, such as the advertising or payroll costs Gustman incurred after the alleged promise was made, are wholly separate from the expectation interest GMAC has in being repaid its debts – the benefit of its original bargain. Because the two interests are distinct, Gustman could likely maintain its estoppel action to recover damages even if GMAC won its case for replevin. "Promissory estoppel is an equitable contract remedy that enforces a promise, in the absence of proof of the elements of a contract, where there has been substantial reliance on the promise, but only to the extent that justice requires." *Scott v. Savers Property and Cas. Ins. Co.,* 2003 WI 60, 262 Wis.2d 127, 160, 663 N.W.2d 715, 731 (Wis. 2003) (Sykes, J., concurring). Even if Gustman won its estoppel argument, justice would not require denying GMAC the right to replevin the automobiles; it would merely mean GMAC had to compensate Gustman for any damages it incurred in reliance on its promise. As such, I am doubtful that promissory estoppel is a bar to GMAC's contractual right to replevin.

As for the good faith argument, Gustman has not persuaded me that this defense is particularly compelling. The contracts Gustman signed indicated that GMAC had the ability to repossess the cars if it "deemed *itself* insecure," a purely subjective condition noteworthy for the absence of any reasonableness qualification. Even if I accepted the argument that good faith

3

imposes some limitations on the application of such a broad clause, it does not appear that there is any indication of bad faith here. Gustman points to its long history of operating the dealership and the fact that it has always paid GMAC on time; it further suggests that GMAC has some sort of irrational animus against it and that it has wanted to cease doing business with Gustman for several years. At the hearing, Gustman implied that GMAC was at fault because its account managers had never even visited the dealership and had not tried hard enough to save the financing relationship. Finally, Gustman points to the sour economic environment as evidence that somehow GMAC is acting precipitously. None of these are suggestive of bad faith, however. Ultimately, Gustman has not pointed to any cases that suggest what its argument implies, namely, that a debtor is entitled to some sort of trial to evaluate the business rationale for a creditor's subjective feeling of insecurity. Creditors, like other investors, get skittish. And when they negotiate a contract that allows them to back out at their own exclusive option, the debtor will be hard-pressed to say that creditor is acting in bad faith. Absent any indication of manifest unfairness or unsavory business practices, I would find it difficult to conclude that the requirements of good faith and fair dealing were breached here. For these reasons, I conclude GMAC has a significant likelihood of success on the merits.

The question of irreparable harm is also among the threshold considerations a court must consider before granting preliminary injunctive relief. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.,* 549 F.3d 1079, 1086 (7th Cir. 2008). Defendants have spent the majority of their argument explaining why injunctive relief is not necessary because GMAC will not experience irreparable harm in the event this Court denies relief. Gustman has placed particular emphasis on the solvency of its business, the value of the collateral, and the personal guarantees
4

signed by its owners, Steve Gustman and Kathryn Young. As long as the cars remain on the lot, Gustman is selling them. Although times are slow, each week brings a significant reduction in the debt it owes to GMAC. Moreover, the loan is secured by ample, or at least adequate, collateral. As of April 15, the outstanding amount on the loans to GMAC was roughly $2,043,000. The new vehicles on Gustman's lot are valued at roughly $1,729,000, and the used vehicles are worth roughly $404,000. In addition, Gustman's parts and accessories are worth over $100,000, and the funds in Gustman's open account with GM total some $236,000. In addition, Gustman's real estate is worth roughly $800,000 more than the mortgage on it, and the two guarantors have a combined net worth of about $1.9 million. GMAC has security interests in all of the above property, and the value of that property exceeds the outstanding loan by more than a million dollars. And when the personal guarantees are included in the analysis, Gustman asserts, there is absolutely no reason for GMAC to believe it was ever in danger of not being paid.

Gustman asserts that its right to replevin is clear and that the time for action is now. Cars are constantly depreciating in value, it asserts, so delay will put its collateral at risk.[1] More specifically, April through June constitutes the best season for selling cars, and so if it is forced to wait it will risk being able to get the best price for the automobiles. In addition, the specter of a bankruptcy filing by GM (now a moot point) adds complexity because under existing agreements GM would reimburse GMAC 100% for the value of the replevined cars. After a bankruptcy filing, GMAC's ability to receive fair value for the automobiles will almost surely be compromised.

---

[1] Most non-investment-grade assets depreciate in value. GMAC's position, taken to its logical extension, would mean that preliminary injunctive relief would almost always be available when creditors felt insecure. Yet such relief is considered extraordinary, rather than ordinary.

5

GMAC correctly asserts that it bargained for the right to replevin the vehicles in question. But it is not correct that its right to replevin means it will be irreparably harmed if it cannot exercise that right in as rapid a fashion as it prefers. It admits that the only purpose for replevin would be to resell the cars. As such, this is a case about money. Any harm resulting from a delay would be curable by money – even now, presumably, Gustman is selling the cars remaining on its lot and reducing the debt it owes GMAC. And even if GMAC misses the prime selling season of April through June, that is mitigated by the fact that Gustman will continue to sell the cars during that period. Moreover, to the extent there is any shortfall arising out of a delay, Gustman has described the other forms of security GMAC holds that far exceed the value of the loan at issue. GMAC has contested the net worth statements of Young and Gustman, and to some extent its concerns are valid. Moreover, the value of the real estate is difficult to gauge, especially in this market and particularly when the viability of a dealership at that location is suspect. Still, I am satisfied that at most GMAC has shown that pursuing these collection avenues would be somewhat more difficult than replevin. And given that we are talking only about any potential shortfall between the value of the cars ultimately replevined (should GMAC succeed on the merits) and the debt it is owed, I am not convinced that the amount of that shortfall is terribly large in relation to the overall debt. In other words, even if there were a ten percent decrease in the value of the cars, I am satisfied that there is enough other security to allow GMAC to be made whole.

Accordingly, I conclude GMAC has not made an adequate showing that it will be irreparably harmed or that it lacks any remedy at law. Because this is a threshold requirement for preliminary injunctive relief, failure to show irreparable harm dooms GMAC's motion. *Girl Scouts*

6

Case 1:09-cv-00293-WCG   Filed 06/03/09   Page 6 of 7   Document 37

*of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.,* 549 F.3d 1079, 1086 (7th Cir. 2008).

Even if GMAC had made some showing of irreparable harm, however, it would still not succeed because the balance of harms weighs strongly in Gustman's favor – after all, it is undisputed that immediate replevin of the remaining automobiles at its dealership will close the dealership and put roughly forty people out of work, whereas GMAC is merely faced with the prospect of collecting its debt from other sources or by a future replevin of somewhat depreciated vehicles. Equitable relief involves equitable considerations. When the movant's proposal would essentially shut down a business permanently, the movant must convince a court that its right to relief is manifest and that swift action is the only reasonable way to protect its interests. Here, although I conclude GMAC might indeed have a strong likelihood of ultimate success, the need for immediate and dramatic action is less than obvious. As courts have repeatedly reminded litigants, preliminary injunctive relief is an extraordinary remedy, and the circumstances here do not rise far above the ordinary. Accordingly, the motion for a preliminary injunction is **DENIED**. The motion to compel is **DENIED** as moot; if the need arises, the motion may be renewed at such time. The clerk is directed to place the matter on for a telephonic scheduling conference.

**SO ORDERED** this   3rd   day of June, 2009.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge